[No. B142129. Second Dist., Div. Seven, May 22, 2001.]

FOX SEARCHLIGHT PICTURES, INC., Plaintiff and Respondent, v.
GIA PALADINO, Defendant and Appellant.

[No. B143537. Second Dist., Div. Seven, May 22, 2001.]

GIA PALADINO, Plaintiff and Respondent, v.
FOX SEARCHLIGHT PICTURES, INC., Defendant and Appellant.

## COUNSEL

Jeffrey F. Webb and Theodore A. Russell for Plaintiff and Respondent Fox Searchlight Pictures, Inc., and for Defendant and Appellant Fox Searchlight Pictures, Inc.

Zimmerman, Koomer, Connolly & Finkel, Alan H. Finkel; Cochran-Bond, Connon & Ben-Zvi and Nicholas P. Connon for Plaintiff and Respondent Gia Paladino and for Defendant and Appellant Gia Paladino.

## OPINION

**JOHNSON, J.**—Upon learning its former in-house counsel planned to sue for wrongful termination of employment, a company struck first by suing the

former counsel for disclosing confidential and privileged information to the attorneys handling her wrongful termination case. The former in-house counsel moved to strike the company's complaint as a SLAPP suit.[1] The company responded with motions to disqualify the attorneys representing its former counsel on the ground they possessed confidential and privileged information belonging to the company and material to the issues between the parties. The trial court denied the SLAPP motion and the motions to disqualify counsel. Both sides appealed.

We affirm the trial court's orders denying the motions to disqualify the attorneys representing the former in-house counsel. We reverse the order denying the SLAPP motion.

### FACTS AND PROCEEDINGS BELOW

From June 1996 until July 1999 Gia Paladino (Paladino) was employed under a written contract as an attorney in the legal department of Fox Searchlight Pictures, Inc. (Fox). A few months before her contract expired, Paladino's supervisor told her the contract would not be renewed. The reason given for not renewing the contract was that a film project on which Paladino had provided legal advice "did not go well." Paladino believed, however, the true reason for her termination was that Fox management was upset over her frequent use of pregnancy leave.

Believing Fox terminated her on the basis of her sex and pregnancy, Paladino consulted a law firm for legal advice as to her rights. Paladino admits, in the course of these consultations, she disclosed ostensibly confidential and privileged information pertaining to Fox.

The attorneys representing Paladino sent Fox a draft of the complaint for wrongful termination of employment which they intended to file on Paladino's behalf. In an accompanying letter Paladino's attorneys advised Fox they did not believe the draft complaint disclosed any privileged information but they wished to give Fox an opportunity to examine the complaint before it was filed and to alert them as to any material Fox believed was protected by the attorney-client privilege.

Upon reviewing the proposed complaint Fox concluded it contained privileged and confidential information. Fox responded by filing a complaint

---

[1] "Strategic Lawsuit Against Public Participation." See Code of Civil Procedure section 425.16, *Wilcox v. Superior Court* (1994) 27 Cal.App.4th 809, 813 [33 Cal.Rptr.2d 446] and discussion in part III, *post.*

against Paladino alleging the disclosure of its confidences to her attorneys constituted a violation of her ethical duties as well as a breach of her fiduciary duty and her employment contract with Fox.[2] In its brief on appeal, Fox describes the confidences Paladino disclosed in general terms as "information about the way Fox structures business transactions and legal advice rendered in connection with a film project which was the subject of ongoing litigation." In its complaint, Fox seeks compensatory and punitive damages and injunctive relief to prevent further disclosure of its confidences and to require Paladino to return all of Fox's documents and files in her possession.

Paladino countered with a motion to strike Fox's complaint as a SLAPP suit.

The day after filing the SLAPP motion, Paladino filed her complaint for wrongful termination. Fox reacted by seeking an ex parte order striking and sealing the complaint on the ground it disclosed privileged information. The order was denied without prejudice after Paladino agreed to rewrite the complaint to remove certain language deemed by Fox to reveal matters protected by the attorney-client privilege. The rewritten complaint, however, did not completely eliminate the material to which Fox objected and another order was entered substituting a second revised complaint and placing the previous complaint under seal. In the meantime, the unredacted complaint was picked up by an internet news service and made available for downloading by the public.[3]

Fox then moved to disqualify Paladino's attorneys on the grounds they had been exposed to confidential information concerning Fox's affairs and they had a conflict of interest with their own client.

In opposition to Paladino's SLAPP motion and in support of its own disqualification motions, Fox submitted documents under seal which purported to establish certain information contained in Paladino's complaint for wrongful termination was privileged or confidential. The trial court denied Paladino's request to inspect the sealed documents in order to respond to

---

[2]Paladino's employment contract with Fox provided in relevant part: "All memoranda, notes, records and other documents made or compiled by you, or made available to you during the term of this agreement concerning the business of the company . . . shall be the company's property and shall be delivered to the company on the termination of this agreement or at any other time on request. You shall keep in confidence and shall not use for yourself or others or divulge to others, any information concerning the business activities of the company or its affiliates which is not otherwise publicly available and which is obtained by you as a result of your employment . . . ."

[3]Fox did not amend its complaint to include this subsequent disclosure of allegedly confidential information.

Fox's opposition to her motion. The court reviewed the sealed documents in ruling on the SLAPP and disqualification motions.

The trial court denied Fox's motions to disqualify Paladino's counsel and denied Paladino's motion to strike Fox's complaint as a SLAPP suit. Both parties filed timely appeals.[4]

## I. *Paladino's Counsel Are Not Subject to Disqualification Based on a Conflict of Interest.*

Fox moved to disqualify Paladino's counsel from both lawsuits on the grounds they had previously represented Fox and they had a conflict of interest with their current client, Paladino. Fox failed to make the requisite showing for disqualification based on a conflict of interest.

### A. *Fox Failed to Establish Paladino's Attorneys Possess Relevant Confidential Material Acquired from Their Prior Representation of Fox.*

■ A former client may disqualify a former attorney from representing an adverse party by showing the attorney presumably possesses confidential information adverse to the former client.[5] Such a presumption arises if the former client can establish a "substantial relationship" between the prior and current representations.[6] A "substantial relationship" is shown by the factual and legal similarities in the two representations and the extent of the attorney's involvement with the cases.[7]

Fox failed in its attempt to establish a substantial relationship between any prior representation of Fox and representation of Paladino. The declarations submitted by Fox merely show Paladino's attorneys were formerly associated with a law firm, Proskauer Rose, which provided Fox with advice and counsel on "intellectual property issues," among other things. Fox provided no evidence these attorneys had, through their former employment, acquired confidential or privileged information material to the present litigation. Fox

---

[4]While these appeals were pending we were notified the case had settled, then notified it had not settled, then, after we expended considerable time and effort reviewing the record, researching the issues presented and preparing the case for calendar, the parties notified us the case had indeed settled and submitted a stipulation to dismiss the appeal. We are not required to dismiss the appeal on stipulation at this late date (Cal. Rules of Court, rule 19(b)), and at oral argument both sides urged that we proceed to file an opinion because of the public importance of the issues involved.

[5]*H. F. Ahmanson & Co. v. Salomon Brothers, Inc.* (1991) 229 Cal.App.3d 1445, 1452 [280 Cal.Rptr. 614] (hereafter *Ahmanson*).

[6]*Ahmanson, supra,* 229 Cal.App.3d at page 1452.

[7]*Ahmanson, supra,* 229 Cal.App.3d at page 1455.

did not explain what an "intellectual property issue" is nor did any Fox employee aver Proskauer Rose handled any matter even remotely similar in law or fact to the current actions.

For their part, Paladino's counsel filed declarations denying involvement with Fox in any matter related to the present litigation. Mr. Finkel stated during his employment at Proskauer Rose he never worked on any Fox matters, never met anyone from Fox and never obtained any confidential Fox information. Mr. Cochran-Bond and Mr. Connon stated the only work they did for Fox was in connection with toxic tort litigation against a film laboratory. This former representation is insufficient to justify disqualification. Possession of confidential information will not be presumed from the mere fact counsel once represented the opposing party.[8] The threshold question remains whether the former representation is substantially related to the current representation. Here it is not.

Fox contends there is another way Paladino's attorneys could have obtained confidential information from Fox relevant to Paladino's wrongful termination action. Paladino herself worked for Proskauer Rose before joining Fox's legal department. From this fact Fox reasons "it should be presumed that Proskauer attorneys learned information about their former associate's job performance at Fox during the course of Proskauer's continued representation of Fox." We see no basis for indulging this presumption. We can imagine that while meeting with Fox executives, Proskauer Rose attorneys might ask about their former colleague, Paladino. But we cannot imagine Fox's response to such a casual inquiry would be intended by Fox to be a confidential communication between client and lawyer or that the response would eventually find its way to Finkel, Cochran-Bond or Connon who, three years later, would use it in a lawsuit against Fox. Fox produced no evidence such a conversation ever took place or that information about Paladino's job performance at Fox ever reached her attorneys except through Paladino.

B. *Fox Failed to Establish a Conflict Between Paladino and Her Own Attorneys.*

An attorney violates the duty of loyalty to the client by assuming a position adverse or antagonistic to the client.[9] Fox posits the following scenario. Suppose Fox offers Paladino a settlement based in part on her

---

[8]See, e.g., *Johnson v. Superior Court* (1984) 159 Cal.App.3d 573, 578 [205 Cal.Rptr. 605].
[9]*Gilbert v. National Corp. for Housing Partnerships* (1999) 71 Cal.App.4th 1240, 1254 [84 Cal.Rptr.2d 204].

acknowledgement the information she provided her attorneys constituted a breach of her duty to protect Fox's confidences, secrets and privileged information. Her attorneys might pressure her to reject the offer in order to protect themselves from an action by Paladino or Fox. Or, in another scenario, suppose Fox amends its complaint to name Paladino's attorneys as defendants in a cause of action for interference with contract. This would put the attorneys' interests directly at odds with Paladino's.

A motion to disqualify will not be granted when only a hypothetical conflict exists.[10] We find Fox's scenarios too speculative to justify disqualification. At this point in time there is no showing the hypothetical settlement is a real possibility or that Fox has any evidence on which to amend its complaint and bring in Paladino's attorneys as defendants. In the absence of an actual conflict between the opposing party and her attorneys the other party should not be able to create one through the simple expediency of threatening to file a suit against the attorneys.[11]

## II. Paladino's Attorneys Are Not Disqualified by Reason of Paladino's Disclosing to Them Confidential or Privileged Information She Acquired While Counsel to Fox.

Fox contends the fact Paladino's attorneys have been exposed to Fox's confidential and privileged information provides an independent basis for disqualifying them. We disagree.

California courts have previously addressed the question whether attorneys should be disqualified after being exposed to the opposing party's confidential information by their client. In each case the court held disqualification was not warranted.

In *Cooke v. Superior Court*, a dissolution action, the husband's butler eavesdropped on the husband's discussions with his attorneys, copied privileged documents and provided this material to the wife who passed it on to her lawyers. The trial court denied the husband's motion to disqualify his wife's attorneys and the Court of Appeal affirmed. The court pointed out there had never been an attorney-client relationship between the wife's attorneys and the husband. "[W]e know of no case," the court stated, "where disqualification of an attorney or his firm was imposed purely as a punitive or disciplinary measure, and where there was no prior representation or

---

[10]*Federal Home Loan Mortgage Corp. v. La Conchita Ranch Co.* (1998) 68 Cal.App.4th 856, 862 [80 Cal.Rptr.2d 634] (hereafter *Federal Home Loan*).

[11]See *Federal Home Loan, supra*, 68 Cal.App.4th at page 862.

confidential professional relationship between the complaining party and the attorney or law firm sought to be disqualified."[12]

In *Bell v. 20th Century Ins. Co.*, a case factually similar to the one before us, Bell, a former personnel officer, brought a wrongful termination action against 20th Century Insurance Company. Bell's attorneys had represented another 20th Century employee in a wrongful discharge case during the time Bell was personnel officer. In the course of the previous case, Bell had several privileged conversations with 20th Century's attorneys regarding the theories, strategies and merits of the defense. 20th Century moved to disqualify Bell's attorneys on the ground they could use the confidential and privileged information Bell learned while participating in the defense of the previous case to 20th Century's detriment in Bell's case. The trial court granted the disqualification motion, but the Court of Appeal reversed observing it could not see "how Ms. Bell could have improperly disclosed information to her own counsel in the prosecution of *her own lawsuit*."[13]

Admittedly, Bell was a personnel officer and not an in-house counsel as was Paladino. One court has suggested this might make a difference. In *Maruman Integrated Circuits, Inc. v. Consortium Co.*, the plaintiff discovered in the course of litigation that one of its former employees had passed confidential information regarding the suit to the defendant's attorney. Affirming denial of the plaintiff's disqualification motion the appellate court remarked: "Here, *the former employee was not an attorney* and therefore was never in an attorney-client relationship with her former employer."[14] The court distinguished the case before it, involving a nonattorney, from *Hull v. Celanese Corporation*, a sex discrimination case, in which the Second Circuit Court of Appeals disqualified a law firm from representing a former member of the defendant's legal staff on the ground confidential or privileged information imparted by the defendant to the former attorney might be divulged in the course of the current litigation.[15]

We do not believe disqualification should turn on whether the former employee was an attorney for the opposing party or served in some other capacity.

---

[12]*Cooke v. Superior Court* (1978) 83 Cal.App.3d 582, 592 [147 Cal.Rptr. 915].

[13]*Bell v. 20th Century Ins. Co.* (1989) 212 Cal.App.3d 194, 198 [260 Cal.Rptr. 459] (italics in original).

[14]*Maruman Integrated Circuits, Inc. v. Consortium Co.* (1985) 166 Cal.App.3d 443, 449 [212 Cal.Rptr. 497] (italics added; hereafter *Maruman*).

[15]*Maruman, supra*, 166 Cal.App.3d at page 449. See *Hull v. Celanese Corporation* (2d Cir. 1975) 513 F.2d 568, 572 (hereafter *Hull*). The *Hull* case is further distinguishable because the former attorney had worked on the defense of the very sex discrimination case in which she now sought to intervene.

If an attorney representing a former in-house counsel against her employer must be disqualified because the client might divulge confidential or privileged information, then it must logically follow the in-house counsel also cannot represent herself against her former employer because she possesses the employer's confidential information. In other words, if we accepted Fox's view the disqualification rules would effectively ban any litigation by a former in-house counsel against the employer as well as bar in-house counsel from defending actions brought by the employer. As we discuss more fully in part IV, *post*, such a result is contrary to the decision in *General Dynamics Corp. v. Superior Court* in which our Supreme Court held a former in-house counsel may sue her employer for wrongful termination so long as she does not publicly disclose information the employer is entitled to keep secret.[16] The *General Dynamics* decision, of course, controls over anything to the contrary in *Maruman* or *Hull*.

For these reasons we conclude the trial court properly denied Fox's motions to disqualify Paladino's counsel.

III. *The Slapp Statute Applies to the Causes of Action in Fox's Complaint.*

Under Code of Civil Procedure section 425.16,[17] "[a] cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim."

As we explained in *Wilcox v. Superior Court*,[18] the defendant in an alleged SLAPP suit bears the initial burden of showing the suit falls within the class of suits subject to a motion to strike under section 425.16.

Fox argues its suit against Paladino does not fall within the class of suits subject to a special motion to strike under section 425.16 because: (1) the SLAPP statute does not apply to lawsuits filed to protect confidential or privileged information; (2) Paladino did not show Fox's lawsuit was intended to chill the exercise of her right to petition for the redress of grievances through litigation; and (3) each cause of action is based, in part,

---

[16]*General Dynamics Corp. v. Superior Court* (1994) 7 Cal.4th 1164, 1190 [32 Cal.Rptr.2d 1, 876 P.2d 487] (hereafter *General Dynamics*).

[17]All statutory references are to the Code of Civil Procedure unless otherwise specified. We will sometimes refer to section 425.16 as the SLAPP statute.

[18]*Wilcox v. Superior Court, supra*, 27 Cal.App.4th 809, 819-821 (hereafter *Wilcox*).

on Paladino's failure to return confidential and privileged documents to Fox—conduct unrelated to speech or petitioning. We reject each of these arguments.

### A. The Initial Determination Whether a Lawsuit Is Subject to a Motion to Strike Under Section 425.16 Is Not a Determination of the Merits of the Suit.

Fox argues its suit does not fall within the SLAPP statute because Paladino has no First Amendment right to disclose privileged and confidential documents or to refuse to return those documents to Fox, their rightful owner. The same argument could be made by the plaintiff in a defamation suit—the defendant has no First Amendment right to engage in libel or slander. Yet, defamation suits are a prime target of SLAPP motions.[19]

The problem with Fox's argument is that it confuses the threshold question of whether the SLAPP statute applies with the question whether Fox has established a probability of success on the merits.[20] The Legislature did not intend that in order to invoke the special motion to strike the defendant must first establish her actions are constitutionally protected under the First Amendment as a matter of law. If this were the case then the inquiry as to whether the plaintiff has established a probability of success would be superfluous.[21].

### B. Paladino Did Not Have to Show Fox's Suit Was Intended to Chill Her Right to Petition for Redress of Grievances.

Fox next contends in order for Paladino to invoke the protection of the SLAPP statute she must show Fox's lawsuit was intended to chill the exercise of her right to petition for the redress of grievances through litigation. This argument is based on the preamble to the SLAPP statute in which the Legislature declared, "there has been a disturbing increase in lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances" and the exercise of these rights "should not be chilled through abuse of the judicial process."[22]

*Foothills Townhome Assn. v. Christiansen* is the only published opinion to hold the defendant's initial burden on a SLAPP motion includes showing the

---

[19]*Wilcox, supra,* 27 Cal.App.4th at page 816.

[20]*DuPont Merck Pharmaceutical Co. v. Superior Court* (2000) 78 Cal.App.4th 562, 566 [92 Cal.Rptr.2d 755].

[21]*Wilcox, supra,* 27 Cal.App.4th at page 820.

[22]Section 425.16, subdivision (a).

plaintiff's lawsuit was in fact brought to chill her First Amendment rights.[23] We disagree with this holding for the reasons stated below.

First, the opinions cited in *Foothills Townhome* do not support its holding. In *Wilcox,* we observed section 425.16 "is limited to exposing and dismissing . . . lawsuits 'brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances' . . . ."[24] However, in explaining the moving party's burden of proof we stated: "[T]he statute requires the defendant to make a prima facie showing the plaintiff's suit arises 'from any act of [defendant] in furtherance of [defendant's] right of petition or free speech under the United States or California Constitution in connection with a public issue.' "[25] Nothing in our opinion can be construed to hold the moving party must *prove* the lawsuit was "brought primarily" to chill its First Amendment rights. *Church of Scientology v. Wollersheim*[26] and *Ericsson GE Mobile Communications, Inc. v. C.S.I. Telecommunications Engineers*[27] are also not on point. *Church of Scientology,* at the page cited in *Foothills Townhome,* holds section 425.16 is not limited to tort actions.[28] The case contains no discussion of the defendant's burden of proof.[29] *Ericsson,* at the pages cited in *Foothills Townhome,* discusses what constitutes an act in furtherance of the right of free speech and an act in connection with a public issue under section 425.16, subdivision (b).[30] It too contains no discussion of the defendant's burden of proof.

■ Furthermore, as our Supreme Court explained in construing section 425.16, " 'legislative intent is not gleaned solely from the preamble of a statute; it is gleaned from the statute as a whole, which includes the

---

[23]*Foothills Townhome Assn. v. Christiansen* (1998) 65 Cal.App.4th 688, 696 [76 Cal.Rptr.2d 516] (hereafter *Foothills Townhome*).

[24]*Wilcox, supra,* 27 Cal.App.4th at page 819.

[25]*Wilcox, supra,* 27 Cal.App.4th at page 820, quoting from subdivision (b) of section 425.16.

[26]*Church of Scientology v. Wollersheim* (1996) 42 Cal.App.4th 628 [49 Cal.Rptr.2d 620] (hereafter *Church of Scientology*).

[27]*Ericsson GE Mobile Communications, Inc. v. C.S.I. Telecommunications Engineers* (1996) 49 Cal.App.4th 1591 [57 Cal.Rptr.2d 491] (hereafter *Ericsson*).

[28]*Church of Scientology, supra,* 42 Cal.App.4th at page 652.

[29]In *Church of Scientology* the church argued, as Fox does here, its complaint did not chill Wollersheim's right of petition because the church did not challenge his right to file a lawsuit. The court rejected this argument as "too restrictive," noting the statute "specifically applies to '[a] cause of action against a person arising from any act of that person in furtherance of the person's right of petition' . . . ." (*Church of Scientology, supra,* 42 Cal.App.4th at p. 648, italics omitted.)

[30]*Ericsson, supra,* 49 Cal.App.4th at pages 1601-1603.

particular directives.' "[31] The "particular directives" of section 425.16 are inconsistent with a requirement the defendant prove the challenged lawsuit was brought to chill her First Amendment rights. Subdivision (a), the preamble to the statute, explains why the Legislature believed it needed to enact anti-SLAPP legislation—to protect the public from lawsuits brought primarily to chill the valid exercise of First Amendment rights. In subdivision (b)(1) the Legislature directed the courts to *presume* a lawsuit against a person which arises from "any act of that person in furtherance of the person's right of petition or free speech" is brought primarily to chill the person's First Amendment rights unless the court determines the plaintiff has a reasonable probability of success on the merits. Thus, the only thing the defendant needs to establish to invoke the protection of the SLAPP statute is that the challenged lawsuit arose from an act on the part of the defendant in furtherance of her right of petition or free speech. From that fact the court may presume the purpose of the action was to chill the defendant's exercise of First Amendment rights. It is then up to the plaintiff to rebut the presumption by showing a reasonable probability of success on the merits.

Fox attempts to engraft a motive or intent requirement not contained in the plain language of section 425.16. The legislative concern is that the cause of action "aris[e] from" an act in furtherance of the constitutional right to petition or free speech. No mention is made in the statute regarding proof of the plaintiff's motives or intent. We decline to impose a burden on the party seeking protection from the SLAPP statute of proving the plaintiff was motivated by an improper purpose. The intent and purpose of the lawsuit may be addressed by the plaintiff when it attempts to establish its ability to prevail on the merits."

We hold, therefore, a defendant moving to strike a SLAPP suit is not required to show the plaintiff intended its suit to chill the defendant's exercise of First Amendment rights or that the suit had such an effect.

. C. *Fox's Prayer That Paladino Be Ordered to Turn Over Allegedly Confidential Material Does Not Immunize Its Suit from a Motion to Strike Under Section 425.16.*

Finally, Fox argues Paladino's wrongful refusal to return Fox's allegedly confidential material is unrelated to her lawsuit against Fox and therefore

---

[31]*Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1118 [81 Cal.Rptr.2d 471, 969 P.2d 564], quoting from *Braun v. Chronicle Publishing Co.* (1997) 52 Cal.App.4th 1036, 1048 [61 Cal.Rptr.2d 58] (also construing the SLAPP statute).

cannot constitute an act "in furtherance of [her] right of petition or free speech."[32] Because each cause of action in Fox's complaint includes an allegation of such wrongful conduct, each cause of action is immune from a motion to strike under the SLAPP statute. We do not accept this argument.

As we explained above, whether the material in question is privileged or confidential is not relevant to the threshold issue of whether the SLAPP statute applies to Fox's complaint. Nor can we say from the record before us, as a matter of law, the maintenance of this material was not an act in furtherance of the preparation and prosecution of Paladino's suit against Fox.[33] ■ Furthermore, a plaintiff cannot frustrate the purposes of the SLAPP statute through a pleading tactic of combining allegations of protected and nonprotected activity under the label of one "cause of action."[34]

For the reasons explained above, the trial court erred in ruling Fox's complaint is not subject to a motion to strike under section 425.16.

We turn now to the question whether Fox demonstrated a reasonable probability of prevailing on the merits.

IV. *An In-house Counsel Suing Her Former Employer for Wrongful Termination May Disclose to Her Attorney All Facts Relevant to the Termination Even If This Includes Divulging Employer Confidences and Privileged Communications.*

■ Fox's suit for breach of confidence raises the narrow issue whether a former in-house counsel suing her employer for wrongful termination may divulge *to her own attorney* employer confidences obtained during the course of her employment. We conclude the former in-house counsel may disclose to her attorney all facts relevant to the termination, including employer confidences and privileged communications. In the present case we are not faced with, and do not decide, whether the former in-house counsel or her attorney can be held liable to the employer for the public disclosure of those confidences and communications.

---

[32] Section 425.16, subdivision (b)(1).

[33] Compare with *Wilcox, supra,* 27 Cal.App.4th at page 820, noting that if the defendant's act was burning down a land developer's office as a political protest "the defendant's motion to strike could be summarily denied without putting the developer to the burden of establishing the probability of success on the merits in a tort suit against defendant."

[34] Compare with *Lilienthal & Fowler v. Superior Court* (1993) 12 Cal.App.4th 1848, 1852 [16 Cal.Rptr.2d 458].

Every lawyer has a duty "[t]o maintain inviolate the confidence, and at every peril to himself or herself to preserve the secrets of his or her client."[35] Additionally, every lawyer has a duty in most cases to "refuse to disclose, and to prevent another from disclosing, a confidential communication between client and lawyer . . . ."[36]

On the other hand, an in-house counsel is an employee and entitled to the same legal protections afforded all employees, including the right not to be discriminated against on the basis of pregnancy, childbirth, or medical conditions related to pregnancy or childbirth.[37]

A suit by a former in-house counsel against her employer poses the challenge of maintaining the attorney's professional obligations to the client while at the same time permitting the attorney to enjoy the legal protections afforded nonattorney employees. Courts in some jurisdictions have concluded it is impossible to meet this challenge and therefore have refused to permit such suits on the ground they pose too great a threat to the attorney-client relationship.[38]

Our Supreme Court, however, has reached a different conclusion. In *General Dynamics*, the court held "there is no reason inherent in the nature of an attorney's role as in-house counsel to a corporation that in itself precludes the maintenance of a [suit for breach of contract or wrongful termination] *provided* it can be established without breaching the attorney-client privilege or unduly endangering the values lying at the heart of the professional relationship."[39]

The court stressed its main concern with wrongful termination suits by in-house counsel was their potential for public disclosure of the former employer's confidences. The court suggested three ways to avoid unwarranted disclosure of privileged information. First, the court noted in-house counsel, like all attorneys, are bound by the ethical rule against disclosure of client confidences and observed "an attorney who unsuccessfully pursues a

---

[35]Business and Professions Code section 6068, subdivision (e).

[36]Evidence Code section 954.

[37]See California Constitution, article I, section 8, Government Code section 12926, subdivision (p), *Badih v. Myers* (1995) 36 Cal.App.4th 1289, 1293, 1296 [43 Cal.Rptr.2d 229]. See also California Rules of Professional Conduct, rule 2-400(A)(1) and (B)(1), which prohibits a law practice, including a corporate legal department, from discriminating on the basis of sex in the hiring, promoting or discharging of employees.

[38]See, e.g., *Balla v. Gambro, Inc.* (1991) 145 Ill.2d 492 [164 Ill.Dec 892, 584 N.E.2d 104, 109, 16 A.L.R.5th 1000].

[39]*General Dynamics, supra*, 7 Cal.4th at page 1169, italics in original.

retaliatory discharge suit, and in doing so discloses privileged client confidences, may be subject to State Bar disciplinary proceedings,"[40] citing *Dixon v. State Bar*[41] and Business and Professions Code section 6068, subdivision (e). Second, the court proposed "that by taking an aggressive managerial role, judges can minimize the dangers to the legitimate privilege interests the trial of such cases may present."[42] Finally, if all else fails and the elements of the plaintiff's cause of action "cannot . . . be fully established without breaching the attorney-client privilege, the suit must be dismissed in the interest of preserving the privilege."[43]

Courts following the lead of *General Dynamics* have also emphasized the need in such cases to avoid the unwarranted public disclosure of client confidences, but have agreed it is possible to strike a balance between protecting the employer's sensitive information and permitting the former in-house counsel to maintain her suit.[44]

None of these cases addressed the specific issue before us in this appeal: may an attorney suing her former employer for wrongful termination disclose to her own lawyers employer-client confidences obtained during the course of her employment insofar as they are relevant to the wrongful termination action? How this question is answered will determine to a large extent whether *General Dynamics* represents a mere Pyrrhic victory or a "momentous step forward" for in-house counsel.[45]

We conclude in-house counsel may disclose ostensible employer-client confidences to her own attorneys to the extent they may be relevant to the preparation and prosecution of her wrongful termination action against her former client-employer.

We base our conclusion on three grounds. The *General Dynamics* opinion itself contemplates that in a wrongful termination case a limited disclosure of employer-client confidences to the plaintiff's own attorney will take place. In addition, we do not believe such disclosure violates an in-house counsel's duty of confidentiality to the employer so long as the disclosure is limited to information the in-house counsel reasonably believes is necessary

[40]*General Dynamics, supra,* 7 Cal.4th at page 1191.

[41]*Dixon v. State Bar* (1982) 32 Cal.3d 728 [187 Cal.Rptr. 30, 653 P.2d 321] (hereafter *Dixon*).

[42]*General Dynamics, supra,* 7 Cal.4th at page 1191.

[43]*General Dynamics, supra,* 7 Cal.4th at page 1190.

[44]See, e.g., *Kachmar v. Sungard Data Systems, Inc.* (3d Cir. 1997) 109 F.3d 173, 180-181, *GTE Products Corp. v. Stewart* (1995) 421 Mass. 22 [653 N.E.2d 161, 167].

[45]Note, *General Dynamics: One Giant Step Forward for in-House Counsel or One Small Step Back to the Status Quo?* (1994) 31 Cal. Western L.Rev. 277, 293-294.

to her attorney's preparation and prosecution of the case. Finally, fundamental fairness to the plaintiff requires the plaintiff be allowed to make such a limited disclosure of the former employer's secrets to her own attorneys to the extent necessary to prepare a claim for wrongful discharge. We discuss each of these grounds below.

As previously noted, our Supreme Court's principal concern over permitting suits by in-house counsel against their former employers was that such suits not result in the unwarranted *public* disclosure of the employer's secrets. In expressing this concern the court stated: "[T]he in-house attorney who *publicly* exposes the client's secrets will usually find no sanctuary in the courts. Except in . . . rare instances . . . it is never the business of the lawyer to disclose *publicly* the secrets of the client."[46] We do not believe the Supreme Court's apprehension about the public disclosure of confidential information included in-house counsel's disclosure of her former employer's secrets to her own attorneys. The attorneys for the in-house counsel are themselves bound by the rules of confidentiality and attorney-client privilege. Thus, disclosure to them is not a *public* disclosure.

Surely, disclosure of a former client's confidences to one's own attorney in the course of seeking advice regarding a dispute with the former client is a far cry from the facts of *Dixon* cited by the court as an example of prohibited disclosure of privileged client confidences.[47] In *Dixon*, the client (identified in the opinion as "C") discharged her attorney and later filed suit seeking to enjoin him from harassing her. In his response, the attorney filed a declaration in which he stated " '[C] constantly worried about everything, including an affair that her husband supposedly had with [C's] sister eight years ago.' " The Supreme Court characterized this declaration as "gratuitous" and "irrelevant to any issues then pending before the court" and concluded it was filed "for the purpose of harassing and embarrassing both C and C's sister and with the knowledge that the disclosure would cause public embarrassment to both."[48] The court found Dixon was subject to discipline because "he made public a sensitive and confidential allegation that he knew would be embarrassing to the honor of his client and her sister for his own personal benefit and, in so doing, violated the sanctity of the confidential relationship existing between attorney and client."[49] Nothing in *General Dynamics* suggests the court's concern over public exposure of client confidences included divulging those confidences to one's own attorneys in the course of litigating a claim against the client.

---

[46]*General Dynamics, supra*, 7 Cal.4th at page 1190, italics added.
[47]*General Dynamics, supra*, 7 Cal.4th at page 1191.
[48]*Dixon, supra*, 32 Cal.3d at page 735.
[49]*Dixon, supra*, 32 Cal.3d at page 739.

In our view, when the court in *General Dynamics* referred to public disclosure of the employer's confidences, it had in mind disclosure in public records and proceedings. This is apparent from the court's suggestions about how the plaintiff could attempt to prove her case "while protecting from disclosure client confidences subject to the [attorney-client] privilege."[50] This advice included "[t]he use of sealing and protective orders, limited admissibility of evidence, orders restricting the use of testimony in successive proceedings, and, where appropriate, in camera proceedings."[51] In making these suggestions, the court necessarily contemplated the plaintiff's attorney would not only be informed as to employer confidences relevant to the litigation but could use those confidences "to make the necessary proof" so long as the confidences did not become "public."

In-house counsel contemplating a wrongful termination action against her former employer clearly needs to consult with her attorneys on the issue of her former employer's confidences given the Supreme Court's warnings of dismissal and possible disciplinary action if client confidences are breached.[52] In light of the limitations the court placed on wrongful termination actions against former employers, in-house counsel must consider whether they can assert their claims without disclosing the employer's confidences or, if not, whether they can assert an applicable exception to the confidentiality requirement. In-house counsel faced with these ethical questions should not be required to fend for themselves based on their own research and what they can remember from a State Bar ethics program. Instead, they should be permitted to seek out independent, candid, professional advice about their ethical duties under their particular circumstances. Indeed, the employer's confidentiality would seem better protected if, early on, in-house counsel consults her own attorney about the ethical issues in a wrongful termination case rather than risk having confidential communications disclosed inadvertently in the later stages of the litigation.[53]

It necessarily follows that if the attorneys representing the in-house counsel are to assist their client in avoiding impermissible public disclosure

---

[50]*General Dynamics, supra*, 7 Cal.4th at page 1191.

[51]*General Dynamics, supra*, 7 Cal.4th at page 1191.

[52]*General Dynamics, supra*, 7 Cal.4th at pages 1190-1191.

[53]See Kershen, *The Ethics of Ethics Consultation* (May 1995) Prof. Law. 1, 8. Fox cites American Bar Association Model Code of Professional Responsibility, Ethical Consideration 4-2 for the proposition that absent client consent "a lawyer should not . . . seek counsel from another lawyer if there is a reasonable possibility that the identity of the client or his confidences . . . would be revealed to such lawyer." A similar view is expressed in Wolfram, Modern Legal Ethics (1986) section 6.4, page 271. These commentators, however, were referring to an attorney divulging her client's confidences in the course of an informal consultation with a colleague or a law professor, not the situation here where the attorney has retained another lawyer to advise her on her legal rights including the legality of disclosing her client's communications. Indeed, the American Bar Association Model Rules of Profes-

of the employer's confidences in court proceedings, it is essential for them to have complete knowledge of all potentially confidential information known to their client and relevant to the litigation. It is only through such full disclosure the attorneys for the in-house counsel can make judgments about what is disclosable and what is not. For example, there may be a fine but critical line between the fact Paladino took positions on certain legal issues involving Fox projects and the substance of her legal opinions. Without knowing the full extent of Paladino's positions and their context, her attorneys cannot make an informed and reasoned judgment about their disclosability in the litigation. As another example, information about Fox's business practices which Paladino believes to be confidential may, upon investigation by her attorneys, turn out to be widely known in the film industry.

Thus, in *General Dynamics,* our Supreme Court evinced a willingness to allow limited disclosure of confidential information to the plaintiff's attorneys in prosecuting a claim of wrongful termination on behalf of a former in-house counsel.

Business and Professions Code section 6068, subdivision (e) does not prohibit such a limited disclosure. That provision states an attorney has a duty "[t]o maintain inviolate the confidence, and at every peril to himself or herself to preserve the secrets, of his or her client." Although the statute on its face brooks no exceptions, it must be read in conjunction with other statutes and ethical rules which specifically permit the attorney to depart from the usual rules of client confidentiality. For example, Evidence Code section 958 states the attorney-client privilege does not apply "to a communication relevant to an issue of breach, by the lawyer or by the client, of a duty arising out of the lawyer-client relationship." This statute may come into play in the present case because, as noted above, a corporate law department cannot discriminate against its employees on the basis of sex,[54] and because Fox may defend against Paladino's wrongful termination action by claiming it fired her not for getting pregnant but for professional negligence.

If an attorney, in protecting her own rights, is entitled to introduce otherwise privileged communications at trial, a fortiori she is entitled to

---

sional Conduct, rule 1.6(b)(2) specifically states a lawyer may reveal confidential information she reasonably believes necessary "to establish a claim or defense on behalf of the lawyer in a controversy between the lawyer and the client . . . or to respond to allegations in any proceeding concerning the lawyer's representation of the client."

[54]California Rules of Professional Conduct, rule 2-400(A)(1) and (B)(1). Contrary to Fox's assertion, Evidence Code section 958 is not limited to cases involving lawyer's fees or malpractice. See, e.g., *Pacific Tel. & Tel. Co. v. Fink* (1956) 141 Cal.App.2d 332, 335 [296 P.2d 843].

reveal those communications to her lawyers in advance of trial. As we explain below, if this were not the case, an attorney could successfully defend the ethics of her behavior in court only to be disciplined for unethical behavior by the State Bar.[55] The State Bar Court, however, has shown no interest in such catch-22 prosecutions. To the contrary, the court has held the duty of confidentiality expressed in Business and Professions Code section 6068, subdivision (e) is modified by the exceptions to the attorney-client privilege contained in the Evidence Code.[56]

For the preceding reasons, we conclude a lawyer does not violate Business and Professions Code section 6068, subdivision (e) when she discloses client confidences to her own attorney for the purpose of determining whether those communications are admissible evidence under an exception to the attorney-client privilege.

Finally, fundamental fairness requires the plaintiff be allowed to make a limited disclosure of her former client's ostensibly confidential information to her own attorneys for purposes of preparing and prosecuting a wrongful termination suit against the former client. If the employer can stifle even this limited disclosure, then *General Dynamics* is nothing more than a judicial practical joke because, even if in-house counsel succeeds in a wrongful termination action against the former client, she may be sanctioned or lose her license to practice or be sued separately by the former client for breach of fiduciary duty.

While every client has the right to freely confer with and confide in his attorney in an atmosphere of trust and security,[57] this does not mean the client can turn the shield of confidentiality into a sword. As one court put it, "[a] lawyer . . . does not forfeit his rights simply because to prove them he must utilize confidential information. Nor does the client gain the right to cheat the lawyer by imparting confidences to him."[58] Once an adversarial relationship develops between the lawyer and her former client, the lawyer must be permitted "to meet the client on even terms, and not be rendered helpless by the client's self-interested version of the facts."[59] Simple fairness therefore demands a lawyer pursuing a wrongful discharge action against her former employer be permitted to divulge to her own attorneys information

---

[55]See *Carlson, Collins, Gordon & Bold v. Banducci* (1967) 257 Cal.App.2d 212, 227-228 [64 Cal.Rptr. 915].

[56]*In the Matter of Lilly* (Review Dept. 1993) 2 Cal. State Bar Ct. Rptr. 473, 478.

[57]*Hooser v. Superior Court* (2000) 84 Cal.App.4th 997, 1003 [101 Cal.Rptr.2d 341].

[58]*Doe v. A Corp.* (5th Cir. 1983) 709 F.2d 1043, 1050.

[59]1 Hazard and Hodes, The Law of Lawyering: A Handbook on the Model Rules of Professional Conduct (2d ed. 1990) section 1.6:305, at page 176.

reasonably necessary to the preparation and prosecution of the action even if the information may be a client confidence. It is then up to the attorneys, in consultation with the plaintiff, to determine if, when and how this information can be utilized in conformity with the rules laid down in *General Dynamics*.[60]

### V. Paladino Was Entitled to Review and Respond to Fox's Material Filed Under Seal in Opposition to Her Motion to Strike.

To show its suit has a reasonable probability of success on the merits, Fox must submit admissible evidence the information Paladino divulged to her attorneys was in fact confidential or privileged and her disclosure went beyond what was reasonably necessary to permit her attorneys to prepare and prosecute a wrongful termination action on her behalf.[61]

In opposing Paladino's SLAPP motion, Fox relied in part on Paladino's declaration admitting she disclosed confidential or privileged information regarding Fox in discussions with her attorneys and on the declaration by Rita Tuzon, assistant secretary of Fox, who stated Paladino "disclosed [privileged or confidential] information to third parties (i.e. her attorneys) without Fox's knowledge or consent."

As the trial court recognized, these declarations were insufficient to sustain Fox's burden of proof. Paladino's declaration would be excluded at trial as hearsay. It is not admissible under the exception for declarations against interest because, even if it met all the other conditions for the exception, Paladino presumably would not be unavailable as a witness.[62] If Tuzon attempted to testify at trial in the conclusory language of her declaration, an objection could be sustained on several grounds including lack of foundation, incompetency, improper opinion and hearsay.

This leaves only the material submitted by Fox under seal to support its opposition to the motion. The trial court found this material persuasive

---

[60]Our analysis of the ethical issue in this case also applies to Fox's claims based on breach of fiduciary duty and breach of the employment contract. This is not a case like those cited by Fox in which the defendant utilized her former employer's customer lists or trade secrets to start a business in competition with the former employer. (See, e.g., *Gordon v. Landau* (1958) 49 Cal.2d 690 [321 P.2d 456]; *Robert L. Cloud & Associates, Inc. v. Mikesell* (1999) 69 Cal.App.4th 1141 [82 Cal.Rptr.2d 143].) We do not believe the confidentiality agreement Paladino signed can be interpreted as prohibiting her from disclosing ostensible client confidences in the course of seeking legal advice on a matter pertaining to those very confidences.

[61]See discussion in part IV, *ante*.

[62]See Evidence Code section 1230.

stating its finding of a probability of success was based "primarily [on] the in camera filing." The trial court erred in basing its ruling on this sealed material over Paladino's objection.

Under extremely limited circumstances, a party to a civil action may file documents sealed from public view.[63] It is difficult to conceive of any circumstances, however, which would permit a party to a civil action to file documents in connection with a motion going to the merits of the action yet sealed from the opposing party's view. As one court has explained: "When a party asserting a claim invokes privilege to withhold crucial evidence, the policy favoring full disclosure of relevant evidence conflicts with the policy underlying the privilege. Courts have resolved this conflict by holding that the proponent of the claim must give up the privilege in order to pursue the claim. Where privileged information goes to the heart of the claim, fundamental fairness requires that it be disclosed for the litigation to proceed."[64] Because the material Fox submitted under seal was, by the trial court's own admission, essential to establishing its probability of success on the merits, fundamental fairness required that it be disclosed to Paladino for review and response.

Fox makes several arguments in support of the trial court's in camera review of Fox's confidential material. None are persuasive.

First, Fox argues there is abundant precedent for in camera review of materials submitted in connection with a motion. None of Fox's cases, however, dealt with materials going to the merits of the action. Most involved motions for the disqualification of counsel. The remainder involved discovery motions in which the court was called upon to determine whether particular documents were exempt from discovery on the basis of a privilege. Fox has cited no case in which a party was allowed to defeat a motion going to the merits of its case with secret material revealed only to the court.

Fox next contends Paladino and her lawyers demonstrated by their previous conduct in mishandling the confidential information to which they had access that they cannot be trusted with such information. This argument begs the question because the issue at the heart of Fox's lawsuit is whether

---

[63]*NBC Subsidiary (KNBC-TV), Inc. v. Superior Court* (1999) 20 Cal.4th 1178, 1181-1182 [86 Cal.Rptr.2d 778, 980 P.2d 337]. The records at issue in the present case were filed in the trial court under seal prior to the adoption of the standards and procedures in California Rules of Court, rules 243.1 to 243.2, effective January 1, 2001.

[64]*Steiny & Co. v. California Electric Supply Co.* (2000) 79 Cal.App.4th 285, 292 [93 Cal.Rptr.2d 920]. See also *Mitchell v. Superior Court* (1984) 37 Cal.3d 591, 604 [208 Cal.Rptr. 886, 691 P.2d 642].

Paladino improperly disclosed to her own attorneys confidential information obtained from Fox in the course of her employment. Furthermore, the trial court could have issued a protective order enforceable by contempt or other sanctions restricting dissemination of the material Fox filed under seal.[65]

Finally, Fox maintains the sealing of records in suits between a former in-house counsel and her employer was specifically approved by our Supreme Court in the *General Dynamics* case. Fox takes the Supreme Court's language out of context. In discussing ways in which an in-house counsel could prove wrongful termination by her employer while still protecting confidences subject to the attorney-client privilege, the court noted sealing orders "and *where appropriate*, in camera proceedings" were among the "measures that might usefully be explored . . . as circumstances warrant."[66] Nothing in the court's opinion suggests those sealing orders should apply to the employee when the employer is using allegedly confidential information to support the merits of its case. Nor was this an appropriate circumstance for an in camera proceeding because, as already noted, other less drastic alternatives were available.

For all of the reasons stated above, we will reverse the trial court's order denying Paladino's special motion to strike. Should Paladino refile her motion the trial court may consider sealing documents submitted by either party in connection with the motion under the standards and procedures set forth in California Rules of Court, rules 243.1 and 243.2 and issue such protective orders as it deems appropriate in the circumstances.

### DISPOSITION

The order denying Fox's motions to disqualify Paladino's counsel is affirmed. The order denying Paladino's motion to strike under Code of Civil Procedure section 425.16 is reversed. The documents lodged in this court by Fox under seal are ordered not to be filed but returned to Fox. Paladino is awarded her costs on appeal.

Lillie, P. J., and Woods, J., concurred.

---

[65]See *General Dynamics, supra*, 7 Cal.4th at page 1191.
[66]*General Dynamics*, 7 Cal.4th at page 1191, italics added.