[No. B145393. Second Dist., Div. Four. Nov. 26, 2001.]

THE PEOPLE, Plaintiff and Respondent, v.
CHANH MINH DANG, Defendant and Appellant

**[Opinion certified for partial publication.\*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts I and III of the Discussion.

**COUNSEL**

Moore, Sorenson & Horner and Robert B. Horner for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Steven D. Matthews and Xiomara Costello, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

EPSTEIN, J.—Chanh Minh Dang was convicted by jury verdict of 16 counts, including residential burglary, false imprisonment, assault with a firearm or deadly weapon, and dissuading a witness by force or threat. In the published portion of this opinion, we reject appellant's argument that the

trial court erred in permitting his former attorney to testify about appellant's threats against witnesses. In the remainder of our discussion we reject his challenges to shackling during trial and to his sentence. We find no reversible error and affirm the judgment of conviction.

FACTUAL AND PROCEDURAL SUMMARY

Appellant's girlfriend was Loan (Jennifer) Nguyen. In September 1998, Ms. Nguyen arranged to move in with the Huynh family because appellant was physically abusing her. On September 1, 1998, Ms. Nguyen arrived at the Huynh home with all her possessions, including items given her by appellant. Mr. and Mrs. Huynh and their five children lived in the home. Appellant had known Mr. Huynh for eight or nine years.

At 10:00 a.m. on the morning of September 1, 1998, appellant went to the Huynh home and entered without permission. He asked Ms. Nguyen to return rings and purses he had given her. At that time, the entire Huynh family was at home, as were two cousins and a friend. Appellant and Ms. Nguyen argued, then left for Chinatown. Later, appellant returned alone, saying he had left Ms. Nguyen on the highway.

When Ms. Nguyen returned later, she and appellant argued. Appellant grabbed Ms. Nguyen by the hair and dragged her off the couch and onto the floor, threatening to kill her if she did not return the purses. Appellant burned her arm with a cigarette. He then left the house and retrieved a gun from his car. He returned to the house, hit Ms. Nguyen in the head with the gun, and pressed the gun to her neck. Appellant dragged Ms. Nguyen from the house. The Huynh family and their guests were in the living room. As he left, appellant waved the gun around and threatened to kill the entire family if they called the police. Appellant said he would kill any police officers as well.

The next day appellant returned to the Huynh home and repeated his threat to kill everyone in the family if police were called. Mr. Huynh was extremely frightened and did not call the police until later. One or two weeks after Mr. Huynh made a police report, appellant called him and again threatened the Huynh family.

In December 1998, appellant told his attorney, Mark Smith, that he was going to try to "pay off" one or more witnesses and that he would "whack" the witnesses if he was not successful in bribing them. Mr. Smith reported these threats to the district attorney and was relieved as appellant's counsel.

In an amended information, appellant was charged with first degree residential burglary (Pen. Code, § 459,[1] count 1); false imprisonment by violence (§ 236, count 2); assault with a firearm (§ 245, subd. (a)(2), counts 3-8); dissuading witnesses by force or threat (§ 136.1, subd. (c)(1), counts 9-10, 15-16); and assault with a deadly weapon by means likely to produce great bodily injury (§ 245, subd. (a)(1), counts 11-14). There were special allegations that appellant personally used a firearm (§§ 1203.06, subd. (a)(1), 12022.5, subd. (a)(1)), making the offenses serious felonies under section 1192.7, subdivision (c)(8) and violent felonies under section 667.5, subdivision (c)(8).

Appellant pleaded not guilty. He testified in his own behalf. While he admitted arguing with Ms. Nguyen, he denied threatening anyone with a gun, harming Ms. Nguyen, or going to the Huynh home on September 2, 1998. He also denied threatening any witnesses.

Appellant was convicted on all 16 counts charged against him, and the firearm use enhancement allegations were found true. He was sentenced to an aggregate term of 91 years, four months in state prison. He filed a timely notice of appeal.

DISCUSSION

I*

. . . . . . . . . . . . . . . . . . . . . . . .

II

■     Appellant argues the testimony of his former defense attorney violated the attorney-client privilege, and that it should have been excluded as more prejudicial than probative. Respondent argues that the testimony came within Evidence Code section 956.5 (hereafter section 956.5) and that appellant failed to object to the testimony on the grounds of prejudice under Evidence Code section 352.

Section 956.5 exempts certain communications from the scope of the attorney-client privilege. It provides: "There is no privilege under this article if the lawyer reasonably believes that disclosure of any confidential communication relating to representation of a client is necessary to prevent the client from committing a criminal act that the lawyer believes is likely to result in death or substantial bodily harm."

---

[1]All statutory references are to the Penal Code unless another is indicated.
*See footnote, *ante*, page 1293.

Counsel for appellant moved to exclude the testimony of Mark Smith, his former defense attorney, on the grounds of attorney-client privilege. The trial court conducted a hearing under Evidence Code section 402. Mr. Smith testified that he believed he had a responsibility to inform the district attorney that appellant had made threats against witnesses. In the first instance, appellant told Mr. Smith, in essence, that he "should not worry or get into trial preparation at an extensive level since there were other options that were being explored. Primarily, that one or more witnesses were either bought off or harmed." Mr. Smith believed that appellant was threatening Ms. Nguyen and Mr. Huynh, but appellant did not name them. In a second conversation, appellant repeated his threats against witnesses and also threatened Mr. Smith.

The trial court ruled that Mr. Smith's testimony about appellant's threats was admissible under section 956.5. After that, counsel for appellant made a second objection, based on lack of foundation. It was overruled. Mr. Smith testified at trial to the threats made by appellant. Counsel for appellant objected to one question as leading and suggestive. He did not object on the ground that the evidence was more prejudicial than probative under Evidence Code section 352.

Appellant characterizes the threats as an attempt to "pay off one or more witnesses." With this characterization, he argues that Mr. Smith's testimony was not authorized under section 956.5 because "while morally wrong, it does not involve the client 'committing a criminal act that the lawyer believes is likely to result in death or substantial bodily harm."

Appellant's argument ignores the substance of Mr. Smith's testimony: that appellant threatened both witnesses and Mr. Smith with death. Such a threat clearly comes within section 956.5.

The interpretation of section 956.5 is a matter of first impression. After the Supreme Court decided *Tarasoff v. Regents of University of California* (1976) 17 Cal.3d 425 [131 Cal.Rptr. 14, 551 P.2d 334, 83 A.L.R.3d 1166], commentators began to discuss whether the principles announced in that case apply to attorneys. (See Sands, *The Attorney's Affirmative Duty to Warn Foreseeable Victims of a Client's Intended Violent Assault* (1986) 21 Tort & Ins. L.J. 355.) Since 1969, the American Bar Association's rules for attorney conduct have contained a provision permitting disclosure of a client's communication to prevent a violent crime.[2] (See Note, *Unveiling the Truth When It Matters Most: Implementing the Tarasoff Duty for California's Attorneys* (1999) 73 So.Cal. L.Rev. 139, 142.)

---

[2]The American Bar Association Model Code of Professional Responsibility, Disciplinary Rule 4-101(c)(3) provided that an attorney may reveal "[t]he intention of his client to commit

In June 1993, the California Supreme Court rejected the State Bar's Rules of Professional Conduct, proposed rule 3-100 for the second time. (See Kerrane, *Will Tarasoff Liability Be Extended to Attorneys in Light of New California Evidence Code Section 956.5?* (1995) 35 Santa Clara L.Rev. 825, 829-830 (hereafter Kerrane).) That proposed rule would have provided in pertinent part: "(C) A member may reveal a confidence or secret: [¶] . . . [¶] (3) To the extent the member reasonably believes necessary; (a) to prevent the commission of a criminal act that the member believes is likely to result in death or substantial bodily harm, CAL. CODE OF PROFESSIONAL CONDUCT Rule 3-100. . . ." (*Id.* at pp. 829-830, fn. 40)

In May 1993, Senator Robert Presley amended his Senate Bill No. 645 on attorney discipline to add section 956.5. Originally, section 956.5 would have required the attorney to believe that threatened death or substantial bodily harm be "imminent." The word "imminent" was deleted in a September 1993 amendment to the bill. The same amendment deleted a provision of section 956.5 which would have given attorneys immunity from liability if a lawyer decided not to take preventive action under section 956.5. (See Kerrane, 35 Santa Clara L.Rev. at p. 832; Sen. Bill No. 645 (1993-1994 Reg. Sess.) as amended Sept. 2, 1993.) Section 956.5 went into effect on January 1, 1994.

We conclude that the language of section 956.5 is plain and that it applies to the threats made by appellant. Under section 956.5 there is no attorney-client privilege for such statements. Mr. Smith's testimony about appellant's threats was properly admitted.

We note a possible conflict between Evidence Code section 956.5 and Business and Professions Code section 6068, subdivision (e), which requires an attorney to "maintain inviolate the confidence, and at every peril to himself or herself to preserve the secrets, of his or her client." Appellant did not raise this issue either in the trial court or in his brief on appeal. We sent a letter to counsel under Government Code section 68081 asking counsel to address this issue at oral argument. Since our issue is limited to the admissibility of the testimony by Mr. Smith, we need not resolve this conflict. Evidence Code section 956.5 is an evidentiary rule, while Business and Professions Code section 6068 is a codified rule of conduct for attorneys. The trial court properly applied the evidentiary rule and admitted the testimony. We note that the State Bar Court has held the duty of confidentiality

a crime and the information necessary to prevent the crime." The Model Rules of Professional Conduct were adopted by the American Bar Association in 1983. Rule 1.6(b)(1) permits disclosure where "the lawyer reasonably believes [it] necessary: [¶] (1) to prevent the client from committing a criminal act that the lawyer believes is likely to result in imminent death or substantial bodily harm."

under Business and Professions Code section 6068, subdivision (e) is modified by the exceptions to the attorney-client privilege codified in the Evidence Code. (See *Fox Searchlight Pictures, Inc. v. Paladino* (2001) 89 Cal.App.4th 294, 314 [106 Cal.Rptr.2d 906]; see also *General Dynamics Corp. v. Superior Court* (1994) 7 Cal.4th 1164, 1191 [32 Cal.Rptr.2d 1, 876 P.2d 487] [recognizing exception to attorney-client privilege where attorney reasonably believes disclosure necessary to prevent criminal act likely to result in death or substantial bodily harm].)

Appellant also argues the testimony should have been excluded as more prejudicial than probative under Evidence Code section 352. The record reflects an oblique reference to section 352 by counsel for appellant. That occurred after Mr. Smith's testimony at the hearing, when counsel for appellant argued that Mr. Smith did not make notes of the conversations, did not know when they occurred, and did not recall specifically what was said. Appellant's attorney said: "It is almost starting to border on a 352." Counsel for appellant made no objection on section 352 grounds when Mr. Smith testified at trial. But during a discussion of jury instructions after Mr. Smith testified, the court indicated that it understood that appellant's counsel *had* raised an objection based on Evidence Code section 352 and that the objection had been overruled.[3] In light of the trial court's treatment of the issue, we shall treat it as preserved for appeal. We turn to the merits.

The trial court did not abuse its discretion in allowing Mr. Smith to testify. The evidence was clearly relevant to the claim of witness intimidation. We see no reason, particularly in light of Evidence Code section 956.5, to exclude the statements simply because they were made to appellant's attorney. If the Legislature had wished to exclude admissibility of an attorney's testimony against a former client in this context, it could have done so by providing in section 956.5 that the attorney could *report* the threat to authorities, but could *not testify* against the client in a trial. Instead, the Legislature did not qualify the provision.

The trial court addressed the potential prejudicial impact of Mr. Smith's testimony. A special instruction was given advising the jury that it was to determine whether appellant made the statements described by Mr. Smith. If it concluded that the statements were not made, the jury was instructed that it could not consider them for any purpose. If the jury found that appellant

---

[3]During the discussion of jury instructions, defense counsel made the point that his client's statements to Mr. Smith were not the basis for the charged crimes because these conversations occurred several months after the incidents at the Huynh home. The trial court stated that it understood counsel's argument about the timing of the statements, and said, "If you are making a 352 objection to it." Defense counsel responded: "I made that earlier." The trial court said: "And you lost."

had made the statements, it was told that they could be considered as a circumstance tending to show a consciousness of guilt, but that such conduct is not sufficient by itself to prove guilt. Finally, the jury was told that the weight and significance of the statements were for it to decide.[4]

On this record, we conclude the trial court did not abuse its discretion in admitting the testimony of Mr. Smith.

### III*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### DISPOSITION

The judgment of conviction is affirmed.

Vogel (C. S.), P. J., and Curry, J., concurred.

Appellant's petition for review by the Supreme Court was denied March 13, 2002.

---

[4]The instruction was a modification of CALJIC No. 2.06: "As a general rule, attorney-client communications are privileged and thus not admissible in evidence. However, there is no attorney-client privilege if the lawyer reasonably believes that disclosure of any confidential communication relating to representation of a client is necessary to prevent the client from committing a criminal act that the lawyer believes is likely to result in death or substantial bodily harm to anyone. [¶] The court has ruled admissible certain testimony from Mr. Dang's former lawyer. The court has made a determination that the subject matter of that testimony was not protected by the attorney-client privilege. [¶] It is up to you, the jury, to determine whether or not the defendant made all or a portion of the statements described by Mr. Smith. You are to determine Mr. Dang's former lawyer's believability in the same fashion that you have been instructed to for all other witnesses. [¶] If you find that Mr. Dang did not make such statements to his former lawyer, then you must not consider them for any purpose. If you find that Mr. Dang did make such statements in whole or in part, you should assess such parts as you find believable. The whole or any portion of such statements may be considered by you as a circumstance tending to show a consciousness of guilt. However, this conduct is not sufficient by itself to prove guilt, and its weight and significance, if any, are for you to decide."

*See footnote, *ante*, page 1293.