Filed 5/17/13  Juan L. v. E.W. Scripps Co. CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

(Shasta)

----

|  |  |
|---|---|
| JUAN L., a Minor, etc., | |
| Plaintiff and Appellant, | C068353 |
| v. | (Super. Ct. No. 170462) |
| E. W. SCRIPPS CO. et al., | |
| Defendants and Respondents. | |

Juan L. (the minor) was the victim of terrible acts of violence when he was seven years old.  In reporting about the incident, which was of intense local interest, defendants (collectively "the media defendants") published the minor's full name.  The minor, by and through his guardian ad litem, sued the media defendants for invasion of privacy and

1

gross negligence for printing his name.[1]  The trial court granted the media defendants'

motion to strike the complaint pursuant to the anti-SLAPP (Strategic Lawsuit Against

Public Participation) statute, Code of Civil Procedure section 425.16.[2]  The trial court

found that the media defendants' publications about the newsworthy incident were

protected by the First Amendment and the privilege set forth in Civil Code section 47,

subdivision (d).

The minor contends (1) the media defendants failed to meet their threshold burden

to show that they acted in furtherance of the right of free speech, because they did not

establish that the minor's name was newsworthy; and (2) the trial court erred in ruling

that the burden then shifted to the minor and that the minor failed to show a probability of

prevailing on the merits.

We conclude the trial court did not err in granting the media defendants' anti-

SLAPP motion.  The minor's lawsuit arose from acts by the media defendants in

furtherance of the right of free speech in connection with a public issue, and the minor

failed to prove a probability of prevailing on the merits.

We will affirm the judgment/order.

BACKGROUND

Based on an anonymous tip regarding a severely beaten child, Shasta County

sheriff's deputies and a child protective services worker went to a Redding residence and

---

[1] The fact we do not use the minor's full name is not intended to indicate that the media defendants' conduct was tortious.  We use an abbreviated name because the California Supreme Court has issued a policy statement to the appellate courts stating, in relevant part:  "To prevent the publication of damaging disclosures concerning living victims of sex crimes and minors innocently involved in appellate court proceedings it is requested that the names of these persons be omitted from all appellate court opinions whenever their best interests would be served by anonymity."  (California Style Manual (4th ed., 2000) § 5.9, pp. 179-180.)

[2] Undesignated statutory references are to the Code of Civil Procedure.

2

contacted Rachel Limon and her brother Gregory Limon.[3]  Gregory initially attempted to keep everyone out of the residence and denied the presence of any children.  Gregory relented when told he would be detained, whereupon the minor was discovered lying on a mattress, having difficulty breathing.  The minor was taken into the custody of child protective services and, due to the severity of his injuries, was flown to UC Davis Medical Center in Sacramento.  He had multiple broken ribs, two broken vertebra, a lacerated spleen and liver, and numerous bruises, scratches and gouges.  The minor was placed in foster care when he was released from the hospital.

Rachel, who had a child with the minor's father and was the minor's guardian, eventually admitted assaulting the minor and that she did so as a form of revenge against the minor's mother.  Rachel was charged with attempted murder, torture, aggravated mayhem and child abuse, with related enhancement allegations.  Gregory was charged with child abuse, being an accessory, and obstructing or delaying a peace officer.

The community of Redding rallied behind the minor with an outpouring of support.  The media defendant's newspaper, the Record Searchlight, published a number of articles regarding the minor's condition and the charges brought against his attackers, and the articles were republished in the Anderson Valley Post, a sister newspaper.  The articles included the minor's name.

The minor, by and through his guardian ad litem, sued the media defendants for invasion of privacy and gross negligence based on six articles in which the media defendants revealed the minor's name and the fact he was in foster care.  The minor asserted his name was confidential and privileged because he was a dependent minor. The minor alleged that after three of the articles were published, his guardian ad litem Richard Bay contacted the media defendants' attorney, Walter McNeil, and advised him

---

[3]  We will refer to the Limons by their first names for clarity.

that litigation would ensue if the media defendants did not cease and desist publishing the minor's full name. According to Bay, McNeil agreed that printing the name was wrong and assured Bay it would not happen again. The media defendants subsequently referred to the minor as "Christmas Boy" for a while, but then used the minor's full name again on more than one occasion. The minor asserted that as a consequence of the media defendants' conduct, he suffered severe emotional distress and humiliation causing him permanent injury and rendering it likely that he would change his name.

The media defendants filed a section 425.16 anti-SLAPP motion to strike the minor's complaint. The media defendants argued that they met their threshold burden to show that the complaint was based on acts by the media defendants in furtherance of their right of free speech in connection with a public issue (§ 425.16, subds. (b)(1), (e)(2), (3) & (4)). The media defendants then argued that the burden shifted to the minor to prove a probability of success on his claims, but the minor could not meet his burden because the media defendants' actions were privileged under the First Amendment and Civil Code section 47, subdivision (d).

The media defendants' motion included declarations concerning the manner in which they lawfully obtained the minor's name and why they chose to use the name. According to Mike Chapman, the breaking news editor for the Record Searchlight, one of the minor's relatives telephoned Chapman the day after deputies found the minor and arrested the Limons. The relative talked with Chapman about the facts surrounding the matter, the people involved, and the minor's condition. The relative stated that he wanted custody and "was interested in 'getting out his side of the story.' " Chapman asked for, and was told, the minor's full name so that Chapman could check with the hospital regarding the minor's medical condition. Chapman told the relative that the newspaper would probably refer to the minor as "Junior," but it was possible the newspaper would decide to publish the minor's name. Chapman attested that his inquiries "were standard procedure for gathering information for a news story. I know of nothing improper,

4

unlawful, or even unusual in the manner in which I obtained the pertinent information which included the name and identity of the [minor]." Chapman did not refer to the minor by his full name in the first article he wrote following this conversation, but he shared the minor's name with members of the news staff "who would be more directly responsible for follow-up stories, so they could use that information for further news stories as deemed appropriate."

According to Silas Lyons, the editor of the Record Searchlight, the staff of the newspaper learned of the minor's name through disclosure by a relative. When a juvenile is a crime victim, a variety of factors are considered in determining whether the identity or name of the minor is newsworthy. In this case, the newspaper published the minor's name because he was not a victim of sexual crimes, and because there was an outpouring of community goodwill toward the minor. In addition, the victim assistance coordinator, Angela Fitzgerald, related that the minor disliked being referred to by nicknames such as "Christmas Boy" and "Junior;" he preferred to be identified by his real name. Furthermore, "County personnel from both the District Attorney's office (including the DA Jerry Benito) and the Sheriff began openly referring to the boy by his accurate first name -- which in combination with repeated publication of the last name of the boy's father (revealed as such in public arrest reports, and identified in news stories as the father of [the minor]) -- left nothing to the imagination as to the complete first and last name of [the minor]."

McNeill declared that when he spoke to Bay, he expressed concern and sympathy for the minor, but he did not say that printing the minor's name was wrong and did not promise that the media defendants would not do so again. He merely said he would pass along Bay's concerns to Lyons. Lyons attempted to call Bay to discuss the newspaper's policy on publishing the names of minors but was unable to reach him.

The minor opposed the motion to strike, contending the complaint was not based on the media defendants' free speech because the minor's name was not newsworthy and

the public had no legitimate interest in it. The minor added that the media defendants had waived the right to rely on section 425.16 because they contractually agreed not to mention the minor's name. The minor disputed that the media defendants' conduct was privileged under Civil Code section 47. He also maintained that he had met his burden of establishing a probability of prevailing on the merits because his name was not newsworthy.

In support of the minor's motion, Bay declared that he told McNeill he was disturbed by the use of the minor's name given that he was a minor and the victim of a heinous crime. Bay declared, "There was no doubt in my mind that Mr. McNeill believed the newspaper's conduct was wrong because he advised me that he would immediately start his inquiries and make sure this does not happen again." The newspaper "honored our agreement" for awhile, but then referred to the minor by his full name on three additional occasions. Bay did not think it was necessary to return Lyons's phone call the next day, because Bay had already expressed his concerns to McNeill and had been assured it would not happen again.

Fitzgerald declared that she told a photojournalist from the Record Searchlight that the minor did not like to be identified by nicknames such as "Christmas Boy" or "Junior." However, she advised the photojournalist that all children's names should be kept confidential when they are involved in criminal matters. The photojournalist assured her that the minor's name would not be used and they agreed to call him "Minor L."

The minor also submitted copies of the media defendants' privacy policies concerning information submitted to them via their interactive online service and "personally identifiable information" gleaned from such submissions. The policies state: "The features, programs, promotions and other aspects of our Website requiring the submission of personally identifiable information are not intended for children," from whom they do not knowingly collect such information. If a parent or guardian of a child under the age of 13 believes the child may have disclosed personally identifiable

6

information to the media defendants, the parent or guardian "may review and request deletion of such child's personally identifiable information as well as prohibit the use thereof."

The minor submitted various articles by the media defendants in which they did not use the names of minors accused of committing crimes, or who were the victims of sexual offenses. The minor also submitted an article by Lyons in which he explained why the name of a specific juvenile offender was withheld from readers even though the name had been used openly in court. Lyons explained the newspaper had an ethical duty to minimize harm to the juvenile, who would forever be marked as an alleged violent criminal. Lyons stated: "Knowing the name would not provide the vast majority of readers with a better understanding of the story." However, he also stated, "Ultimately, we may still publish the name. . . . If we can report a more complete story of his life and how he came to be charged with such a terrible crime, we will again weigh the ethical pros and cons." In another article, Lyons explained that the newspaper's policy behind withholding the name of juvenile offenders "is that they should have an opportunity to redeem themselves."

The trial court granted the media defendants' motion to strike, finding that the media defendants' conduct was protected by the First Amendment and privileged under Civil Code section 47, subdivision (d).

APPLICABLE LAW AND STANDARD OF REVIEW

The Legislature has declared that courts must broadly construe the anti-SLAPP statute (section 425.16), which is intended to protect "the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances." (§ 425.16, subd. (a); *Levy v. City of Santa Monica* (2004) 114 Cal.App.4th 1252, 1258.) Under the statute, any "cause of action . . . arising from any act of [the defendant] in furtherance of the person's right of petition or free speech . . . in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the

7

plaintiff has established that there is a probability that the plaintiff will prevail on the claim." (§ 425.16, subd. (b)(1).)

The anti-SLAPP statute creates " 'a two-step process for determining' whether an action should be stricken as a SLAPP" under section 425.16. (*Varian Medical Systems, Inc. v. Delfino* (2005) 35 Cal.4th 180, 192.) First, the court decides "whether the defendant has made a threshold showing that . . . the act or acts of which the plaintiff complains were taken 'in furtherance of the [defendant]'s right of petition or free speech . . . in connection with a public issue.' " (*Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 67, citing § 425.16, subd. (b)(1).)

An act in furtherance of the right of free speech in connection with a public issue includes: "(1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." (§ 425.16, subd. (e)(1)-(4).)

If the defendant's alleged conduct falls within one of the categories enumerated in section 425.16, subdivision (e), then the burden shifts to the plaintiff to demonstrate a probability of success on his or her claims. (§ 425.16, subd. (b)(1).) The plaintiff must show " ' "that the complaint is both legally sufficient and supported by . . . facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited." ' [Citations.]" (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 88-89 (*Navellier*).) The process is similar to the one used in determining summary judgment motions. (*Gilbert v. Sykes* (2007) 147 Cal.App.4th 13, 26.) "The showing must be made through 'competent and

8

admissible evidence.' [Citations.] Thus, declarations that lack foundation or personal knowledge, or that are argumentative, speculative, impermissible opinion, hearsay, or conclusory are to be disregarded. [Citation.] [¶] 'In deciding the question of potential merit, the trial court considers the pleadings and evidentiary submissions of both the plaintiff and the defendant (§ 425.16, subd. (b)(2)); though the court does not *weigh* the credibility or comparative probative strength of competing evidence, it should grant the motion if, as a matter of law, the defendant's evidence supporting the motion defeats the plaintiff's attempt to establish evidentiary support for the claim.' [Citation.]" (*Id.* at pp. 26-27.) Accordingly, "the motion to strike should be granted if the defendant 'defeats the plaintiff's showing as a matter of law, such as by establishing a defense or the absence of a necessary element.' [Citation.]" (*Carver v. Bonds* (2005) 135 Cal.App.4th 328, 344.)

The standard of review on appeal is de novo (*ComputerXpress, Inc. v. Jackson* (2001) 93 Cal.App.4th 993, 999), but this simply means that our review of the trial court's decision is independent rather than deferential. It is still the appellant's burden to articulate a legal argument as to why the trial court's decision was erroneous. (Cf. *Claudio v. Regents of University of California* (2005) 134 Cal.App.4th 224, 230 [de novo review of motion for summary judgment does not alter appellant's burden on appeal].) De novo review does not obligate us to cull the record for the benefit of the appellant in order to attempt to uncover the requisite supporting facts. (*Ibid.*) " 'As with an appeal from any judgment, it is the appellant's responsibility to affirmatively demonstrate error,' " and our " 'review is limited to issues which have been adequately raised and briefed.' [Citation.]" (*Ibid.*)

DISCUSSION

I

The minor contends the media defendants failed to meet their threshold burden to show that they acted in furtherance of the right of free speech, because they did not establish that the minor's name was newsworthy. But the minor's characterization of the

9

threshold burden is too restrictive (*M.G. v. Time Warner, Inc.* (2001) 89 Cal.App.4th 623, 629) and it "confuses the threshold question of whether the SLAPP statute [potentially] applies with the question whether [he] has established a probability of success on the merits." (*Fox Searchlight Pictures, Inc. v. Paladino* (2001) 89 Cal.App.4th 294, 305, fn. omitted (*Fox Searchlight*); accord, *Navellier, supra,* 29 Cal.4th at p. 94.)

"The Legislature did not intend that in order to invoke the special motion to strike the defendant must first establish [his or] her actions are constitutionally protected under the First Amendment as a matter of law." (*Fox Searchlight, supra,* 89 Cal.App.4th at p. 305; accord, *Navellier, supra,* 29 Cal.4th at pp. 94-95.) "Instead, under the statutory scheme, a court must generally presume the validity of the claimed constitutional right in the first step of the anti-SLAPP analysis, and then permit the parties to address the issue in the second step of the analysis, if necessary. [Citation.] Otherwise, the second step would become superfluous in almost every case, resulting in an improper shifting of the burdens." (*Chavez v. Mendoza* (2001) 94 Cal.App.4th 1083, 1089-1090; see *Governor Gray Davis Com. v. American Taxpayers Alliance* (2002) 102 Cal.App.4th 449, 458.)

Thus, to meet their threshold burden, the media defendants need only have shown that the minor's cause of action arose from acts by the media defendants in furtherance of their right of free speech in connection with a public issue (§ 425.16, subd. (b)(1)), as defined in subdivision (e). They only had to make a general showing; requiring any more would have rendered the second step superfluous and resulted in improper burden shifting. The media defendants mentioned the minor's name while publishing newspaper reports about (1) a violent assault against the child, (2) the investigation of the crime, and (3) the subsequent criminal proceedings. This conduct unquestionably involved the freedom of the press and freedom of speech in connection with an issue of public interest, and in connection with an issue under consideration by a judicial body. (§ 425.16, subds. (e)(2) & (4).) Just as "[d]omestic violence is an extremely important public issue in our society" (*Sipple v. Foundation for Nat. Progress* (1999) 71 Cal.App.4th 226, 238), so too

is child endangerment.  (Cf. *Terry v. Davis Community Church* (2005) 131 Cal.App.4th 1534, 1547.)

Moreover, even if publication of the minor's name was not a protected activity, nevertheless where a cause of action is based on both protected activity and unprotected activity, it is subject to section 425.16 " ' "unless the protected conduct is 'merely incidental' to the unprotected conduct." ' [Citations.]" (*Haight Ashbury Free Clinics, Inc. v. Happening House Ventures* (2010) 184 Cal.App.4th 1539, 1550-1551, citing *Peregrine Funding, Inc. v. Sheppard Mullin Richter & Hampton LLP* (2005) 133 Cal.App.4th 658, 672 [first prong of SLAPP analysis met where the allegations of loss resulting from protected activity were not merely incidental or collateral to unprotected activity]; and *Mann v. Quality Old Time Service, Inc.* (2004) 120 Cal.App.4th 90, 104 [because the defendants' reports to government agencies formed a substantial part of the factual basis for defamation and trade libel claims, the claims were subject to the SLAPP statute even though also based on nonprotected statements].)  Here, the media defendants' protected activity in reporting on crime, criminal investigation and criminal proceedings is not incidental to the allegation that they invaded the minor's privacy by publishing his name; the minor is suing the media defendants because they published his name in connection with the protected activity, rather than using a pseudonym.

"In sum, since [the minor's] action against [the media defendants] is based on [their] constitutional free speech and petitioning activity as defined in the anti-SLAPP statute, [the media defendants] met [their] threshold burden of demonstrating that [the minor's] action is one arising from the type of speech and petitioning activity that is protected by the anti-SLAPP statute." (*Navellier, supra*, 29 Cal.4th at p. 95.)  Accordingly, the burden shifted to the minor to show a probability of prevailing on the merits.

## II

As best we can discern, the minor next contends the trial court erred in ruling that the minor failed to show a probability of prevailing on the merits.[4]

The tort of invasion of privacy in the publication of private facts contains the following elements: "(1) public disclosure (2) of a private fact (3) which would be offensive and objectionable to the reasonable person and (4) which is not of legitimate public concern." (*Diaz v. Oakland Tribune, Inc.* (1983) 139 Cal.App.3d 118, 126.)

Regarding the first element, there is no dispute that there was public disclosure. As for the second element, the media defendants lawfully obtained the minor's full name from a relative. Prior to publishing the name, the media defendants learned that the sheriff and district attorney were openly using his first name. The media defendants had already published the full name of the minor's father in connection with an unrelated crime, noting that he was the father of the minor who had been so horribly abused. Thus, the minor's full name was already public knowledge, or as Lyons put it, the aforementioned facts "left nothing to the imagination as to the complete first and last name" of the minor.

The minor provides no argument or authority on the third element, that the disclosure of his name would be offensive and objectionable to a reasonable person. Instead, he focuses on the fourth element. To prevail on that element, the minor needed to demonstrate that his name was "not of legitimate public concern," i.e., that it was not newsworthy. (*Shulman v. Group W Productions, Inc.* (1998) 18 Cal.4th 200, 215-216 (*Shulman*).) Conversely, newsworthiness was a defense to the minor's claim. "[T]he publication of truthful, lawfully obtained material of legitimate public concern is constitutionally privileged and does not create liability under the private facts tort." (*Id.*

---

[4] The minor's argument heading merely asks: "Would [the Minor] Have Prevailed on the Merits?"

at p. 227.) "[N]ewsworthiness is not limited to 'news' in the narrow sense of reports of current events. 'It extends also to the use of names, likenesses or facts in giving information to the public for purposes of education, amusement or enlightenment, when the public may reasonably be expected to have a legitimate interest in what is published.' [Citations.]" (*Id.* at p. 225, quoting *Gill v. Hearst Publishing Co.* (1953) 40 Cal.2d 224, 229.)

If the publication was of legitimate public concern, there can be no tort liability where the facts disclosed "bear a logical relationship to the newsworthy subject of the publication and are not intrusive in great disproportion to their relevance," and this is so even if the subject of disclosure was "a private person involuntarily caught up in events of public interest." (*Shulman, supra*, 18 Cal.4th at p. 215.) "In general, it is not for a court or jury to say how a particular story is best covered. The constitutional privilege to publish truthful material 'ceases to operate only when an editor abuses his broad discretion to publish matters that are of legitimate public interest.' [Citation.] By confining our interference to extreme cases, the courts 'avoid[] unduly limiting . . . the exercise of effective editorial judgment.' [Citation.] Nor is newsworthiness governed by the tastes or limited interests of an individual judge or juror; a publication is newsworthy if some reasonable members of the community could entertain a legitimate interest in it." (*Id.* at p. 225.)

The minor admitted in the trial court that the crimes and circumstances were newsworthy. The name of the minor and what happened to him bore a logical relationship to the newsworthy subject and was of legitimate interest to the community of Redding. It was reasonable for the public to want to know whether the minor had been moved to a place of safety, such as foster care. Even if it might have been a better policy to keep the minor's name and the fact he was in foster care private, that does not mean those facts were not of legitimate public interest. (Cf. *Fletcher v. San Jose Mercury News* (1989) 216 Cal.App.3d 172, 187 [whether journalism standards were violated had

13

no bearing on defamation action].)  And the state may not constitutionally punish the publication of truthful, lawfully obtained information about a matter of legitimate public interest except in "circumstances involving 'a need to further a state interest of the highest order.' " (*Gates v. Discovery Communications, Inc*. (2004) 34 Cal.4th 679, 693 (*Gates*), quoting *Smith v. Daily Mail Publishing Co.* (1979) 443 U.S. 97, 103 [61 L.Ed.2d 399, 405].)

The minor does not demonstrate that revealing the identity of a physically abused minor or the fact of his placement in foster care violated a state interest of the highest order.  Indeed, he does not discuss or explain why he thinks his situation is distinguishable from multiple United States Supreme Court cases finding various interests *not* to be of the highest order.  (See *Bartnicki v. Vopper* (2001) 532 U.S. 514, 529-533 [149 L.Ed.2d 787, 802-805] [interests in removing incentive to illegally intercept conversations, and in minimizing harm to persons whose conversations are intercepted]; *The Florida Star v. B.J.F*. (1989) 491 U.S. 524, 536-541 [105 L.Ed.2d 443, 457-460] [interests in rape victim privacy, victim safety, and encouraging victims to report offenses]; *Smith v. Daily Mail Publishing Co., supra,* 443 U.S. at p. 104 [61 L.Ed.2d at pp. 405-406] [rehabilitative interest in protecting anonymity of juvenile offenders]; *Cox Broadcasting Corp. v. Cohn* (1975) 420 U.S. 469, 496 [43 L.Ed.2d 328, 350] [interest in protecting anonymity of deceased rape victim]; see also *Gates, supra*, 34 Cal.4th at p. 693 [protection of long-term anonymity of former convicts].)

Furthermore, the minor fails to address the media defendants' assertion of privilege under Civil Code section 47, subdivision (d), which provides, in relevant part: "A privileged publication . . . is one made: [¶] . . . [¶] (d)(1) By a fair and true report in, or a communication to, a public journal, of (A) a judicial, (B) legislative, or (C) other public official proceeding, or (D) of anything said in the course thereof, or (E) of a verified charge or complaint made by any person to a public official, upon which complaint a warrant has been issued."

14

This statutory provision, which is broadly construed, "confers an absolute privilege." (*Sipple v. Foundation for Nat. Progress, supra,* 71 Cal.App.4th at p. 240.) It applies if the substance of the publication or broadcast captures the gist of the statements made in the official proceedings. (*Carver v. Bonds, supra*, 135 Cal.App.4th at p. 351.) A newspaper and news Web site are " 'public journal[s]' " within the meaning of the statute. (*Ibid.*) A " 'public official proceeding,' " includes a police investigation. (*Balzaga v. Fox News Network, LLC* (2009) 173 Cal.App.4th 1325, 1337.) "In the context of judicial proceedings, . . . reports which comprise a history of the proceeding come within the privilege, as do statements made outside the courtroom and invoking no function of the court, e.g., representations and theories expressed by criminal justice personnel in relation to pretrial events such as pursuit and arrest of the defendant. [Citation.]" (*Braun v. Chronicle Publishing Co.* (1997) 52 Cal.App.4th 1036, 1050, italics omitted.)

Here, the media defendants used the minor's name in published articles that were a fair and true report of the police investigation into the assault committed against the minor and of the subsequent judicial proceedings against the perpetrators, the Limons. As such, the use of the minor's name is privileged under Civil Code section 47, subdivision (d).

Rather than discussing these constitutional and statutory matters that formed the basis for the trial court's ruling, the minor instead argues the trial court erred in overruling his objections to the media defendants' affidavits in support of their anti-SLAPP motion. The minor suggests that when the objectionable material is excised there is no support for the anti-SLAPP motion. But the minor does not discuss his specific objections in his opening brief and he does not provide any legal authority for his position. He merely incorporates by reference the objections made in the trial court, asserting that the media defendants' declarations were hearsay, nothing more than deceitful, and authored for the sole purpose of stopping the litigation. Under the

15

circumstances, the minor's contention is forfeited. (*Garrick Development Co. v. Hayward Unified School Dist.* (1992) 3 Cal.App.4th 320, 334 [an argument may be forfeited where the appellant simply incorporates by reference arguments made in papers filed in the trial court rather than brief the arguments on appeal]; *Badie v. Bank of America* (1998) 67 Cal.App.4th 779, 784-785 [when an appellant fails to raise a point, or fails to support a point with reasoned argument and citations to authority, it is forfeited].)

But even if the trial court had erred in overruling the minor's objections, the minor does not establish the manner in which he suffered prejudice as a result of those rulings. A judgment will not be reversed unless the error at the trial court level resulted in a miscarriage of justice to the extent that a different result would have been probable without the error. (Cal. Const., art. VI, § 13; Code Civ. Proc., § 475; Evid. Code, §§ 353, 354; *Pool v. City of Oakland* (1986) 42 Cal.3d 1051, 1069; *Malibu Mountains Recreation, Inc. v. County of Los Angeles* (1998) 67 Cal.App.4th 359, 372.) The appellant has the burden of affirmatively demonstrating prejudicial error. (*Pool v. City of Oakland, supra,* 42 Cal.3d at p. 1069.) And appellate courts will not "act as counsel for appellant by furnishing a legal argument as to how the trial court's ruling was prejudicial." (*Century Surety Co. v. Polisso* (2006) 139 Cal.App.4th 922, 963.)

The minor does not explain how a different result would have been probable had the asserted errors not occurred.  He has therefore failed to satisfy his affirmative burden on appeal of demonstrating prejudicial error.

DISPOSITION

The judgment/order is affirmed.


                                                  MAURO            , J.


We concur:


              RAYE          , P. J.


            NICHOLSON     , J.